IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>DENNIS SUSAETA,<br><br>   Defendant. | MEMORANDUM DECISION AND ORDER ON FORFEITURE<br><br><br>Case No. 2:07-CR-785 TS |

This matter is before the Court to determine the issue of forfeiture. The government contends that Defendant's Harley Davidson motorcycle, VIN 1HD4CEM113K451020 (the "motorcycle"), is subject to forfeiture. Defendant claims that the motorcycle is not subject to forfeiture and that forfeiture would violate the Eighth Amendment.

I.  BACKGROUND

Defendant Dennis Susaeta was indicted on one count of Possession of an Unregistered Sawed-Off Shotgun in violation of 26 U.S.C. § 5861(d). The Indictment contained a notice that the government intended to seek forfeiture. Defendant pleaded guilty to the offense on January 22, 2009. Defendant's Statement in Advance of Plea contained the following statement of facts:

> On or about May 14, 2007, in Salt Lake County, Utah, I knowingly possessed a sawed-off shotgun, namely a CBC Model 151, 20 ga. shotgun with a barrel length of 12 7/8 inches and an overall length of 22 inches. I recognize that I did not have

this shotgun registered in my name in the National Firearms Registration and Transfer Records.  I also recognize now that the shotgun had been in or affected interstate commerce.  Specifically, I sold this shotgun to an individual while at Barbary Coast Bar on or about May 14, 2007.  I also recognize that I used my vehicle to transport the shotgun, namely a Harley Davidson motorcycle, VIN 1HD4CEM113K451020.[1]

In the Statement in Advance of Plea, Defendant agreed to forfeit his interest in the shotgun.  The parties agreed that the forfeiture of the Harley Davidson motorcycle would be decided by the Court pursuant to a Fed.R.Crim.P. 32.2 hearing.  The Court conducted that hearing on March 19, 2009.

For the purposes of that hearing, the parties agreed to the following facts: On May 14, 2007, ATF Special Agent Jason Townsend, while acting in an undercover capacity, purchased a short-barreled shotgun from Defendant.  On that date, SA Townsend was at the Barbary Coast Saloon ("BCS") when Defendant, whom SA Townsend had met earlier, entered.  SA Townsend waived to Defendant, who then approached SA Townsend's table.  Defendant told SA Townsend that in 1994, he lost his license after a hit-and-run accident.  Defendant explained that he left the scene of the accident because he had a short-barreled shotgun under the seat of his vehicle.

SA Townsend informed Defendant that if he were to ever find anyone who may have a short-barreled shotgun for sale, he would be interested in purchasing.  Defendant stated that he was in possession of another short-barreled shotgun and was interested in selling it.  Defendant stated that he lived only a few minutes away and could get the firearm if SA Townsend would wait.  SA Townsend advised Defendant that he would wait and Defendant left, driving the motorcycle at issue here.  Approximately ten minutes later, SA Townsend identified Defendant returning to the BCS driving the same motorcycle.

---

[1] Docket No. 34, at 3.

SA Townsend and Defendant went to look at the firearm.  SA Townsend witnessed Defendant retrieve what appeared to be a short-barreled shotgun from the right rear saddlebag of the motorcycle.  SA Townsend identified the firearms as a Kmart, 20 gauge, model 151, serial number 840297, shotgun.  The barrel of the shotgun appeared to be about twelve (12) inches in length.

After SA Townsend inspected the firearm, he asked Defendant what he wanted for the firearm.  Defendant stated that he wanted $60.00 for the firearm, which SA Townsend provided.  A search of Utah motor vehicle records indicated that the motorcycle is registered to Defendant.

## II. DISCUSSION

Fed.R.Crim.P. 32.2(b)(1) states:

> As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute.  If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.  The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

The government's burden at a forfeiture hearing is to prove, by a preponderance of the evidence, the nexus between the property and the offense.[2]  Because criminal forfeiture is viewed as part of the sentencing process,[3] hearsay is admissible.[4]

As set out in Rule 32.2(b)(1), the Court must first determine what property is subject to forfeiture under the applicable statute.  49 U.S.C. § 80302(a)(2) defines "contraband" as "a firearm involved in a violation of chapter 53, of the Internal Revenue Code of 1986 (26 U.S.C. § 5801 et seq.)."  This would include the firearm at issue here.

49 U.S.C. § 80302(b) provides that a person may not: "(1) transport contraband in an aircraft, vehicle, or vessel; (2) conceal or possess contraband on an aircraft, vehicle, or vessel; or (3) use an aircraft, vehicle, or vessel to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband."  All three of these situations are present here.

49 U.S.C. § 80303 states:

> The Secretary of the Treasury or the Governor of Guam or of the Northern Mariana Islands . . . or, when the violation of this chapter involves contraband described in paragraph (2) or (5) of section 80302(a), the Attorney General, or a person authorized by another law to enforce section 80302 of this title, shall seize an aircraft, vehicle, or vessel involved in a violation of section 80302 and place it in the custody of a person designated by the Secretary, the Attorney General, or appropriate Governor, as the case may be.  The seized aircraft, vehicle, or vessel shall be forfeited . . . ."[5]

---

[2]*United States v. Fruchter*, 411 F.3d 377, 383 (2d Cir. 2005); *United States v. Keene*; 341 F.3d 78, 85-86 (1st Cir. 2003); *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003).

[3]*See Libretti v. United States*, 516 U.S. 29, 38-39 (1995).

[4]*See United States v. Ivanchukov*, 405 F.Supp. 2d 708, 709 n.1 (E.D. Va. 2005).

[5]49 U.S.C. § 80303.

Based on the above, the Court finds that the motorcycle at issue here is subject to forfeiture under § 80303. The motorcycle was used to transport contraband; conceal contraband; and facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband. Thus, it is subject to seizure under § 80303 and "shall be forfeited."

Further, the Court finds that the government has proven the requisite nexus between the property and the offense. Defendant argues that the government has failed to show any nexus between the motorcycle and the offense of conviction—possession of an unregistered sawed-off shotgun. However, the Court finds, based on § 80303, the Defendant's Statement in Advance of Plea, and the undisputed facts, that the government has shown the required nexus.

Defendant next argues that forfeiture of the motorcycle would violation the Excessive Fines clause of the Eighth Amendment. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[6] As the government notes, there is some question as to whether the Excessive Fines clause applies to this case.[7] The Court need not decide this issue because the forfeiture of Defendant's motorcycle is clearly not excessive under the Eighth Amendment.

In *United States v. Bajakajian*, the Supreme Court held "that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."[8] In making this determination, the Court considers: (1) the nature and extent of the

---

[6] U.S. Const. amend. VIII.

[7] *See United States v. Bajakajian*, 524 U.S. 321, 333-34 (1998); *United States v. Dodge Caravan Grand SE/Sport Van*, 387 F.3d 758, 764-65 (8th Cir. 2004) (Colloton, J., concurring).

[8] *Bajakajian*, 524 U.S. at 334.

crime; (2) whether the violation was related to other illegal activities; (3) the penalties that may be imposed for the violation; and (4) the extent of the harm caused.[9] The Tenth Circuit has stated that, in addition to the *Bajakajian* factors, courts should consider: "the general use of the forfeited property, any previously imposed federal sanctions, the benefit to the claimant, the value of seized contraband, and the property's connection with the offense."[10]

Considering these factors here, the Court cannot find that forfeiture of the motorcycle is grossly disproportional to the gravity of Defendant's offense. First, the possession of a sawed-off shotgun is a serious offense. As the Tenth Circuit has recognized, "the statute making possession of an unregistered weapon illegal is targeted at specific weapons deemed to be particularly dangerous."[11] Similarly, the transportation and transfer of a sawed-off shotgun are serious offenses.[12] Though Defendant was not charged with an offense resulting from these activities, Defendant admitted in his Statement in Advance of Plea that he sold the shotgun and that he used his motorcycle to transport the shotgun.

Second, Defendant's possession of the sawed-off shotgun was related to other illegal activities. As discussed above, Defendant transported and transferred the shotgun. Defendant's motorcycle was an integral part of these transactions.

---

[9] *Id*. at 337-40. *See also United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1100 (10th Cir. 2002) (discussing *Bajakajian* factors).

[10] *Id*. at 1101 (citing *United States v. 829 Calle De Madero*, 100 F.3d 734, 738 (10th Cir. 1996)).

[11] *United States v. Dwyer*, 245 F.3d 1168, 1172 (10th Cir. 2001) (joining with other circuits in holding that possession of an unregistered firearm in violation of 26 U.S.C. 5861(d) is a crime of violence as defined by U.S.S.G. § 4B1.2).

[12] *See* 26 U.S.C. § 5861(e), (j).

Third, Defendant faces a term of imprisonment of up to ten years and a statutory maximum fine of $10,000.[13] The Presentence Report indicates that the sentencing guidelines provide for a fine of between $4,000 and $10,000. The government has provided evidence, which is undisputed, that Defendant's motorcycle is worth between $3,405 and $4,690. Thus, the value of the motorcycle is less than half of the statutory maximum fine and is below or near the low-end of a guideline range fine.

Finally, the extent of the harm caused was de minimus, as the sale of the weapon was to an undercover agent. However, as the government points out, the potential harm to society for the offense of conviction is great.

Based on these factors, the Court finds that forfeiture of the motorcycle is not grossly disproportional under the Excessive Fines Clause. The Court will issue a preliminary order of forfeiture pursuant to this Order.

DATED   April 2, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[13] *Id*. § 5871.